## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

————————————

HUGH B. McKEEN,

Plaintiff,

vs.                                                                    Civil No. 04-1182 WJ/DJS

U.S. BUREAU OF LAND MANAGEMENT, et al.

Defendants.

### MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS
### BASED ON LACK OF JURISDICTION

THIS MATTER comes before the Court upon Defendants' Motion to Dismiss Due to

lack of Jurisdiction Under the APA, filed August 22, 2005 (**Doc. 26**), and Defendant's Motion to

Extend Time to Reply to Plaintiff's Response to the Motion to Dismiss, filed November 2, 2005

(**Doc. 34**).  The Court granted Plaintiff's request for oral argument: a telephonic hearing was held

on the motion to dismiss on December 9, 2006.  Having considered the parties' arguments

presented orally and in the briefs, as well as the applicable law, I find that Defendant's motions are

well-taken and both will be granted.

#### Background

This case arises from the denial of Plaintiff's application for a United States Bureau of

Land Management ("BLM") grazing permit.  At issue is whether the Court should proceed to the

merits of the underlying case, which is essentially an appeal for judicial review of an agency

decision.  Defendants contend that because there has not yet been a final agency decision, Plaintiff

has not exhausted administrative remedies and therefore this Court lacks jurisdiction to conduct

the review.   The relevant facts are undisputed and are extracted from the parties' briefs and from

the Administrative Record ("AR").

*Initial Application*

      In New Mexico, the right to graze federal public lands is determined by the control of basewater.  As it turns out, the basewater issue is critical not only to the merits of the  underlying case, but also in the context of whether BLM issued a final agency decision.[1]  Although this case was filed in federal court in October, 2004, its beginnings can be traced back to January 23, 1990 when Plaintiff ("McKeen") submitted an application for a BLM  grazing permit, requesting grazing privileges on the Apache Creek Allotment ("allotment").  On the application, McKeen showed Sid Place and Geronimo Tank as his "basewaters."  Prior to his application, McKeen had sold his private land, which included the natural spring at Sid Place, to The Nature Conservancy ("TNC").  On February 9, 1990 BLM notified McKeen that his application was not accepted, based on BLM's conclusion that McKeen no longer owned or controlled what it considered to be the only recorded basewater at Sid Place.  Pltff's Ex. 2; AR 1068.  BLM relied on a CFR regulation which provides for automatic and immediate termination of a grazing permit when a permittee loses ownership or control of "all or part of his/her base property."  43 CFR § 4110.2-1(d).  McKeen states that as a result of BLM's determination that he had automatically lost his only basewater on the allotment through the sale of his private land, he was ordered in early 1990 to remove all livestock he had on the allotment.   AR1034.

      Another letter from BLM to McKeen, dated March 23, 1990, references the application

---

[1] BLM follows a basewater standard rather than base land, due to the scarcity of water and the abundance of land in New Mexico.  Base property using a water standard is "(2) water that is suitable for consumption by livestock and is available and accessible, to the authorized livestock when the public lands are used for livestock grazing." 43 C.F.R. § 4100.0-5; See AR 662.

rejection, as well as a subsequent meeting that took place between McKeen and a BLM resource area manager.  McKeen was advised in this letter that the February letter was not a final decision and was not therefore appealable.  McKeen later withdrew the appeal he had submitted previously.  AR1065.  The March 1990 letter also acknowledged that during the meeting, McKeen resubmitted his application showing Geronimo Tank as his basewater.  Pltff's Ex. 3; AR 982.  However, having lost what BLM considered to be the sole basewater for the allotment, under BLM's regulations, McKeen's application would not be given any grazing preference.  Instead, he would be competing with other applications that were submitted.  McKeen filed an appeal of this notification with BLM.

Meanwhile, an application for a grazing permit had been submitted by Mr. Larry Monzingo of the Bar V Five Cattle Company ("Bar V").  On May 8, 1991 and May 14, 1991, BLM issued a Final Decision, accepting Bar V's application for grazing privileges and denying McKeen's resubmitted application for the same.  After conducting a field survey, BLM determined that the Geronimo Tank basewater, located on state lands, would not be easily available for consumption by livestock when the livestock are grazing on federal public lands.  AR 981, 994, 997, 1025 and 1027.  BLM's other reason for rejecting the application was a concern that Geronimo Tank would not serve the southern part of the allotment, and that it would be difficult to protect riparian areas while cattle crossed back and forth between federal land and state land where Geronimo Tank was located.

McKeen was surprised to learn that Geronimo Tank would not be acceptable as basewater, and was even more surprised to learn that Bar V had been awarded the grazing permit when it had offered Split Tank and High Pine Tank as basewaters.  McKeen claims he owns

3

adjudicated water rights (as does Larry Monzingo of Bar V, apparently) to these two tanks which are located on the southern part of the allotment, but contends that he was told by a BLM official not to list these in the application because it was not possible to use water on BLM land as a basewater.  AR619; AR634.

*Appeal and Hearing*

McKeen appealed the denial of his grazing permit at a hearing before an Administrative Law Judge ("ALJ") on October 21, 1992.  AR 556-879.  The ALJ issued his decision over a year later on December 27, 1993, addressing two questions: whether BLM's decision to terminate Plaintiff's grazing privilege was proper, and whether BLM acted properly in awarding the grazing permit to Bar V instead of McKeen.  The ALJ supported BLM's final decisions and ruling that BLM did not act improperly in awarding the grazing privileges to Bar V.  AR265.

In his written decision, the ALJ found that there was no legal authority for McKeen's contention that he retained water rights to Sid Place when he sold his land to TNC, since there was no evidence of an express reservation of those rights in the transfer deed and no evidence that TNC employees believed they had purchased land without water rights.  The ALJ concluded that BLM did not act unreasonably in assuming that basewater was lost in McKeen's land conveyance to TNC.  AR275.

The decision also addressed the matter of water rights to the two southern tanks, Split Tank and High Pine Tank.  At the hearing, McKeen had stated that he intended to offer both sources as basewater in his grazing permit application, but was discouraged from doing so by Vernon Saline, BLM's Resource Area Manager ("Saline"). Saline testified that he was aware that McKeen used these tanks, but did not consider them as base property because they were not listed

4

as such on the application.  AR271, 790.  Also, Saline did not remember telling McKeen not to

list these tanks as basewater, but also indicated that if he did, it was because BLM records did not

indicate that McKeen was authorized to list them.  AR271, 748-749.[2]  The ALJ found that the

issue of any rights to the two southern tanks did not weigh in McKeen's favor because the

evidence showed that BLM was never informed that he held an interest in that water.

    With regard to the propriety of granting the grazing permit to Bar V, the ALJ determined

that McKeen's loss of control over basewater resulted in an automatic loss of his grazing permit

under 43 CFR § 4110.2-1(d).  This "left the field open for others to apply for the grazing permit

on equal footing" with McKeen.   The ALJ found that Saline's decision was not arbitrary, and

was made with regard to proper range management and protection of riparian areas.  Saline had

considered that Geronimo Tank would not serve the southern portion of the allotment because

cattle would not be allowed to cross the protected riparian area to reach that water.  Saline

accepted Bar V's application because it listed basewaters at the southern portion of the allotment

(Split Tank and High Pine Tank).  The ALJ noted that BLM records showed that Bar V had

acquired rights to the Split Tank and High Pine Tank in the 1950's and that these water rights had

carried forward.  AF276.

    McKeen believed that BLM rejected his grazing permit and discriminated against him

because he testified against a state bill supported by TNC.  The ALJ found no evidence to support

_____

    [2]  Part of the confusion over this issue resulted from the fact that BLM did not have good
documentation of permits which were granted in the 1930's to 1950's.  AR274.  McKeen may
have had control and use over these waters, but they were permitted to Bar V, although it was
noted that there was no permit in the BLM files on Split Tank.  AR270.  Plaintiff submits as an
exhibit a copy of a "Water Base Property Record and Rating" which purports to be a listing of
other basewaters owned by Plaintiff, including the two southern tanks, but this does not appear to
be the basis for any grazing permit awarded to Plaintiff.  Pltff's Ex. 1; AR1002.

this theory.  AR276.

*Appeal to the IBLA*

McKeen appealed the ALJ's decision to the Interior Board of Land Appeals ("IBLA"), which issued an order on October 19, 1998 (copy attached as Exhibit 1 to Plaintiff's Complaint). As reasons for appeal, McKeen maintained that he still controlled the water rights at the spring at Sid Place, and even assuming the spring was conveyed, Saline had ignored BLM policy which allows a permit applicant time to substitute a replacement for lost basewater.  In addition, McKeen argued that he owned and controlled other basewaters (Geronimo Tank, Split and High Pine Tanks) which were the same basewaters authorized as basewaters by the BLM area manager in awarding the grazing permit to Bar V in a subsequent permit application.  AR199-262.  For reasons not clear to the Court, the IBLA took almost five years to render a decision from McKeen's appeal. AR6-9.  The IBLA Order set aside the BLM decisions dated May 8, 1991 and May 14, 1991 (denying McKeen's application and awarding the grazing permit to Bar V).  The IBLA Administrative Law Judge viewed these issues as grounded in state law, and thus the BLM area manager could not properly determine whether McKeen lost ownership of his water rights when he sold his land to TNC.  IBLA remanded the case back to BLM finding that disputes regarding the ownership and possession of water rights warranted a suspension of the BLM decisions "until [McKeen] establishes his rights to the basewater at Sid Place."  AR8.

McKeen's main observation regarding the IBLA remand Order is that it addressed only the Sid Place issue, i.e., whether McKeen lost control of the Sid Place water rights when he sold the underlying private land).  The Order did not address what McKeen considers to be an equally critical question, which is whether BLM was precluded from finding that the grazing permit to

6

McKeen was automatically terminated, based on BLM's listing of three other basewaters
(referring to Pltff's Ex. 1, "Water Base Property Record and Rating").

*BLM Proposed Decision and Plaintiff's Federal Lawsuit*

BLM did not act upon the IBLA October 1998 remand Order until July 2005.  During that
time, faced with a looming statute of limitations, McKeen filed the instant lawsuit in October
2004.  When it finally issued a Notice of Proposed Decision for the Apache Creek Allotment
("NPD") on July 29, 2005, the agency concluded that "[t]o date, Mr. McKeen has not established
rights to the basewater at Sid Place . . . ."[3]  On that basis, BLM proposed in part to (1) rescind the
final decisions from may 1991; (2) consider the grazing applications submitted by Plaintiff and Bar
V as "conflicting applications" under 43 C.F.R. § 4130.1-2; (3) solicit other grazing applications;
and (4) complete an environmental assessment to analyze a reasonable range of alternatives with
regard to proper grazing management and use of area resources.  Deft's Ex. 1.

Subsequent to the Government's filing of the motion to dismiss, the NPD was converted
to a Final Decision.   Pltff's Ex. 4.  The decision is consistent with the NPD, but also responds to
points of objection raised by McKeen to the NPD.

McKeen contends that the Government has waived the exhaustion defense (based on the
assumption that exhaustion is not a matter of court jurisdiction), and in the alternative, that the
IBLA decision is the final agency action and is appealable.  Defendant contends that neither the
IBLA decision or the BLM Notice of Proposed Decision is a final agency action, and that final
agency action will not occur until BLM decides whether to issue a grazing permit for the

---

[3]  McKeen states that the decision was issued when the parties were in the midst of
settlement discussions and just prior to a formal settlement conference before Magistrate Judge
Don Svet.  Resp. at 5.

allotment.[4]

**Discussion**

I address first Defendant's opposed motion to extend time in which to file a reply.

## I.      Defendant's Motion for Extension of Time

Defendant's reply was filed well over a month after McKeen's response.  Defendant had apparently failed to reschedule the new reply deadline following the Court's granting McKeen a two-week extension of time to respond to Defendant's motion to dismiss – an extension which Defendant had not opposed.  In the spirit of "one good turn (almost) deserves another," McKeen does not oppose an extension limited to three days from the date Defendants discovered they had failed to file a reply, but opposes an extension of the length actually taken by Defendants to file their reply.

McKeen does not consider the reason for Defendants' delay to be a sufficient basis for granting Defendant's request, especially since the cause for that delay was an extension of time granted solely for McKeen's benefit -- however, the Court does.   Given those circumstances, the Court rejects McKeen's objections to an extension of time, and will grant Defendants' request nunc pro tunc, rendering Defendants' reply to be timely filed.

## II.     Waiver of  Exhaustion Issue

McKeen argues that exhaustion of administrative remedies is not a matter of the Court's jurisdiction, and thus exhaustion is simply an affirmative defense which Defendant has waived by failing to raise it as an affirmative defense, under Fed.R.Civ.P. 8(c).

------

[4]  As stated previously, BLM's final decision was issued after the Government filed this motion.

A party must exhaust administrative remedies when a statute or agency rule dictates that exhaustion is required.  Coosewoon v. Meridian Oil Co., 25 F.3d 920, 924 (10th Cir. 1994) (Department of Interior regulations require that party must appeal decision to highest authority within agency before judicial review is available); Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50- 51, (1938) (until prescribed administrative remedy has been exhausted, judicial review of agency decision is not available).

McKeen brings this action for judicial review under the Administrative Procedures Act, 5 U.S.C. §§ 701 et seq. ("APA"). Under § 704, only "final agency action" is "subject to judicial review."  A decision subject to appeal to an agency's highest authority is not final unless it is made operative during the appeal period.  43 C.F.R. § 4.21(c).  For decisions made by the BLM, the IBLA is the highest agency authority.  Cmp., Western Shoshone Business Council v. Babbitt, 1 F.3d 1052, 1055 (10th Cir. 1993) (for purposes of APA, Interior Board of Indian Affairs was final authority for DOI administrative actions by BIA officials).

McKeen argues that § 704's "subject to judicial review" language does not actually confer subject matter jurisdiction and thus does not necessarily bar review of non-final agency action. Since exhaustion does not implicate subject matter jurisdiction, McKeen argues, it is merely an affirmative defense which Defendant failed to assert in its Answer, and is therefore waived.   The Court finds that the case law does not bear out McKeen's approach to the exhaustion requirement.  See, e.g., McBride v. CITGO Petroleum Corp., 281 F.3d 1099 (10th Cir. 2002) (Exhaustion of administrative remedies by a private sector employee was necessary to establish subject matter jurisdiction under the ADA); Duplan v. Harper,188 F.3d 1195 (10th Cir. 1999) (court had subject matter jurisdiction over Federal Tort Claims Act claim where plaintiffs had

9

exhausted their administrative remedies before filing amended complaint); <u>Jones v. Runyon</u>, 91 F.3d 1398, 1399 (10th Cir. 1996) (exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII); <u>Michael Reese Hosp. & Med'l Ctr. v. Thompson</u>, 427 F.3d 436 (7th Cir. 2005) (noting that exhaustion of administrative remedies is a prerequisite of subject matter jurisdiction); <u>but see</u> <u>Martinez v. Richardson</u>, 472 F.2d 1121, 1125 (10th Cir. 1973) (noting exhaustion requirement was "not invariable" where administrative remedy is "wholly inadequate" and the federal question is "so plain that exhaustion is excused") and <u>Fitzgerald v. Corrections Corp. of America</u>, 403 F.3d 1134 (10th Cir. 2005) (inmate's failure to meet the exhaustion requirement of 42 U.S.C. § 1997e(a) did not deprive court of subject matter jurisdiction over the action).

The Court finds that the doctrine of exhaustion of administrative remedies is more accurately treated as a prerequisite to jurisdiction rather than as an affirmative defense. Fed.R.Civ.P. 12 (b)(1) provides that a defense based on this Court's lack of subject matter jurisdiction may be made by motion. Moreover, this particular defense may be raised at any time by the parties or the Court. <u>Tuck v. United Services Auto. Ass n</u>, 859 F. 2d 842, 844 (10th Cir. 1988). Thus, there has been no waiver of the exhaustion claim by Defendant.

## III.  Whether McKeen Has Exhausted Administrative Remedies

McKeen claims that the IBLA decision is the final agency action because the decision remanded the Sid Place issue, but ignored all the other appeal issues raised by McKeen. McKeen had argued on appeal that BLM was precluded from finding that his grazing permit was automatically terminated based on BLM's listing of three other basewaters he had been using, i.e., the southern water sources at Split and High Pine Tanks. McKeen regards supplemental

basewater issue as a dispositive one.  Because this issue was overlooked on appeal by the IBLA, McKeen contends that there is no further action to be taken by BLM on that issue, making the IBLA decision a "final"agency action.

McKeen is concerned that he will be prejudiced by the fact that the supplemental basewater issue was not addressed.  Since loss of the Sid Place basewater resulted in the termination of his grazing permit, offering these southern tanks as basewater would have avoided the termination of his grazing permit.  He also argues that the BLM proposed and final decisions went beyond the scope of the IBLA remand order, which was limited to a suspension of the previous BLM decisions until McKeen established his rights to the basewater at Sid Place. Instead, the 2005 BLM decisions impermissibly broadened the effect of the remand order and redefined the issues.  McKeen contends that BLM is muddling the bureacratic process and creating new issues (such as opening up the application process and considering them as competing applications under 43 C.F.R. § 4130.1-2.) which will probably involve new parties and require him to continue to appeal these new issues to preserve the rights he is asserting in this federal action.  McKeen argues that by creating a new decisionmaking process, BLM is effectively foreclosing judicial review of issues raised in the initial appeal to IBLA.

The Government's position is that the IBLA decision cannot be final because it was remanded for further action and factual information: whether McKeen could somehow show ownership of the Sid Place water rights despite his sale of land to TNC.  This information was necessary in order to establish whether McKeen had rights to a grazing permit. Notwithstanding BLM's September 8, 2005 decision, there has been no determination regarding  an award of the permit and thus no final agency action.

11

The Court agrees with McKeen that the BLM process was protracted and confusing. It took five years for the IBLA to render a decision from the time McKeen appealed the ALJ's decision affirming the BLM's actions and almost seven years for BLM to take action on that order. However, the remand order did address one of the points raised by McKeen in his appeal, giving McKeen an opportunity to prove his claim to the Sid Place basewater. While BLM took no action for several years after the remand order, during all that time McKeen failed to come up with any proof of his argument on appeal that he still owned the water rights to the Sid Place spring.[5] In response to McKeen's "protest point" to BLM's July 2005 proposed decision that it was untimely, BLM responded in the September 2005 notice of final decision that ". . . there have been numerous invitations to discuss the status of the allotment with BLM personnel and opportunities offered to Mr. McKeen to establish that he has rights to the water at Sid Place." BLM had concluded, "through testimony and review of the records at the NM State Engineer's. . . that there are no water rights adjudicated at Sid Place." Pltff's Ex. 4 at 3.

The requirement of administrative exhaustion avoids premature interruption of the administrative process and assures that the agency be given "the first chance to exercise [its] discretion or apply [its] expertise." Rocky Mt. Oil and Gas Ass'n v Watt, 696 F.2d 734, 743 (10th Cir. 1983) (citing McKart v. United States, 395 U.S. 185 (1969)). In this case, as the Government points out, the 1998 IBLA decision cannot be final because it required further information (allowing an opportunity for McKeen to show ownership of the spring at Sid Place --

---

[5] At the telephonic hearing, McKeen explained that ongoing litigation in another water rights case prevented his access to the property on which Sid Place was located, although it is unclear why this would have prevented McKeen from presenting legal arguments to BLM regarding his ownership of water rights in the area.

which was an issue presented by him on appeal).  Factual issues are still before the agency, such as ownership of the Sid Place water; title matters; environmental assessments related to effects of grazing and related to requirements under the National Environment Protection Act ("NEPA"). The agency has not made decisions based on their findings on these issues.

McKeen contends that his grazing permit could not have been terminated in 1990, nor would all subsequent issues (such as who gets the "new" grazing permit) have ever arisen, if only IBLA had decided the supplemental basewater issue on appeal.  It is interesting that what McKeen characterizes as a dispositive issue is the supplemental basewater issue (the Split and High Pine Tanks issue) rather than the Sid Place spring issue which was directly related to the loss of the grazing permit he had held and for which he was given an opportunity to establish ownership.  McKeen not only prematurely assumes he would have prevailed on the supplemental basewater issue but also assumes that it is dispositive for whole grazing permit matter.  However, the IBLA decision had rescinded the BLM award of a grazing permit to Bar V which was based on the southern tank water sources, as well as rescinded the denial of McKeen's application.  In its July 2005 proposed decision following remand by the IBLA, BLM stated that "the grazing preference was attached to [Sid Place]" and that "[o]ther waters on the allotment were not recognized as basewaters."  Pltff's Ex. 4 at 3.   After a field visit was conducted, BLM also found that "Geronimo Tank could be acceptable as the basewater" to service the allotment and that the applications submitted both by McKeen and Bar V would be considered "conflicting applications" under the relevant grazing regulations.  Ex. 4 at 5.

McKeen essentially argues that BLM's "endless bureaucratic actions" foreclose judicial review by constantly creating new issues for appeal.  The starting point for agency process in this

case was the loss of McKeen's grazing permit from the sale of his land to TNC and the denial of a new permit - which was rescinded by the IBLA decision.  The logical end (final) point for the administrative process will be the award of a grazing permit to an individual.  There is simply no merit to McKeen's claim that the 1998 IBLA decision or the 2005 BLM decisions effectively forecloses judicial review – judicial review is simply delayed until review becomes appropriate.  Further, as the Government notes, there may be no need for judicial review if McKeen is awarded a grazing permit.  This possibility makes judicial review at this point premature.  On this point, I note that there is some indication that McKeen misunderstands the breadth and scope of available remedies under the APA.  At the hearing, McKeen argued that even if he is awarded a permit, he has still sustained an injury from BLM's actions, because he has lost the use of his grazing permit over the last sixteen years.   If McKeen is seeking money damages, such damages are not available under the APA, which provides judicial review of "agency action" and waives sovereign immunity for claims "seeking relief *other than money damages*."  Vander Zee v. Reno, 73 F.3d 1365, 1372 (5th Cir. 1996) (emphasis added); 5 U.S.C. § 702; Hamilton Stores, Inc. v. Hodel, 925 F.2d 1272, 1279 n.12 (10th Cir. 1991) (defining "money damages" under § 702).

McKeen relies on McKart to argue that an exception to administrative exhaustion exists in this case.  However, that case is hugely distinguishable.  The plaintiff in McKart was inducted for military service and was a Selective Service i nductee who had been given a "sole surviving son" exemption from military serve under the Selective Service Act of 1948 and classified as IV on the basis that his father had been killed in World War II.   After petitioner's mother died, the local Selective Service board reclassified him as a Class IA, on the theory that petitioner no longer qualified for sole surviving son status since there was no longer a family unit.  McKeen was facing

criminal prosecution for failure to report for induction when he was called up subsequent to this

reclassification.  The Government argued that petitioner's failure to exhaust his administrative

remedies before the local board barred him from defending his criminal prosecution for failure to

report for induction.  The court rejected the Government's argument, noting the harshness of

applying the exhaustion doctrine where petitioner was facing prison without any judicial review of

what the court considered to be an invalid order.  No such considerations or exigencies exist here.

In fact, McKart undercuts McKeen's position in stating:

> A primary purpose is, of course, the avoidance of premature interruption of the
> administrative process. The agency, like a trial court, is created for the purpose of
> applying a statute in the first instance. Accordingly, it is normally desirable to let the
> agency develop the necessary factual background upon which decisions should be based.
> And since agency decisions are frequently of a discretionary nature or frequently require
> expertise, the agency should be given the first chance to exercise that discretion or to
> apply that expertise. And of course it is generally more efficient for the administrative
> process to go forward without interruption than it is to permit the parties to seek aid from
> the courts at various intermediate stages.

395 U.S. at 193-94.  Unlike McKart this grazing permit case has factual issues which still need to

be determined by the agency prior to determining who should be awarded a grazing permit.  Thus,

the exception that was so appropriate for the petitioner in Mckart does not apply here, particularly

because the final agency decision may result in an award of a grazing permit to McKeen.

McKeen also relies on Idaho Watersheds Project  v. Hahn, 307 F.3d 815 (9th Cir. 2002),

which is also distinguishable from this case, primarily because in Idaho Watersheds, grazing

permits had already been issued by BLM.  The issue raised by an environmental group was

whether there had been NEPA compliance before issuance of the permits.  The court excluded the

group from further exhaustion because the challenged decision would not be rendered inoperative

pending the appeal process and concluded that the matter was properly before the federal court.[6]

307 F.3d at 825.  The Court also noted that BLM regulations establish no time frames or

deadlines for grazing permit appeals to be concluded and administrative appeals can languish for

years without decision.  Thus, granting of the stay would have the practical effect "of a multi-year

renewal of grazing permits without environmental review and without imposing any measures to

protect the environment while appeals are pending." 307 F.3d at 826.   Here, no grazing permits

have been issued.  It appears that McKeen simply wishes to find a shortcut around some

unnfavorable findings BLM has issued.

     Last, McKeen maintains that the 1998 IBLA decision was a final agency action based on

the factors outlined in <u>Bennett v Spear</u>, 520 U.S. 154 (1997):

> As a general matter, two conditions must be satisfied for agency action to be "final": First,
> the action must mark the "consummation" of the agency's decisionmaking process. . . it
> must not be of a merely tentative or interlocutory nature. And second, the action must be
> one by which "rights or obligations have been determined," or from which "legal
> consequences will flow. . . ."

520 U.S. at 177.  The Court finds that there criteria do not hold up to McKeen's position.  The

consummation of BLM's decisionmaking process will not occur until the natural result of the

pending factual considerations occurs: an award of a grazing permit.  Moreover, for now, no

"rights or obligations" have been determined: the 1991 BLM decisions awarding Bar V a permit

and denying McKeen the same have been rescinded and it is still undetermined whether McKeen

has procured a right to one.

---

     [6]  Under 5 U.S.C § 704, an agency action is not considered final where the agency
provides by rule for administrative appeal to a superior agency authority and provides that the
action is inoperative while an administrative appeal is pending.  Thus, in the <u>Idaho Watersheds</u>
case, the fact that the permits that had been issued were operative rendered them final agency
decisions, requiring no further exhaustion.

**Conclusion**

The administrative process at BLM is pending; factual issues need to be determined before the final agency action – awarding grazing permits – occurs.  Allowing McKeen to proceed without a decision by BLM on the award of grazing permits could result in piecemeal review of BLM's actions, and as such is premature. Although the administrative process to date has been excruciatingly long and the Court is sympathetic to what McKeen characterizes as BLM's "endless bureaucratic actions," requiring McKeen to wait until a decision about permits is made will not foreclose him from judicial review of any of the issues that were timely appealed.

THEREFORE,

**IT IS ORDERED** that Defendant's Motion to Extend Time to Reply to McKeen's Response to the Motion to Dismiss (**Doc. 34**) is GRANTED nunc pro tunc, rendering Defendants' reply to be timely filed;

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Due to lack of Jurisdiction Under the APA (**Doc. 26**) is hereby GRANTED in that this action is DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies.

**IT IS FINALLY ORDERED** that the granting of Defendants' Motion to Dismiss based on lack of jurisdiction disposes of this case in its entirety; however, considering the administrative process has been on-going for approximately sixteen years, each party shall bear their own costs.

_____
UNITED STATES DISTRICT JUDGE